# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HARMONY HAUS WESTLAKE, L.L.C., et al., | § § § § | |
| Plaintiffs and Counter-Defendants, | § § | |
| v. | § § | CIVIL ACTION NO. 1:19-cv-1034-XR |
| PARKSTONE PROPERTY OWNERS ASSOCIATION, INC., | § § § | |
| Defendant and Counter-Plaintiff. | § § | |

## DECLARATION CONCERNING ATTORNEYS' FEES

My name is Eric J. Hansum. I am an attorney licensed to practice law in the State of Texas and in the United States District Court for the Western District of Texas. As shown by my resume, attached to this Declaration as Exhibit 1-A, I have over 20 years of experience practicing property owner association and employment law in the state and federal courts and am familiar with the normal and reasonable rates charged in the Western District of Texas. I have also handled or assisted with various appeals in state and federal court in areas ranging from ERISA to the Fair Housing Act.

Parkstone seeks a recovery of its reasonable and necessary attorneys' fees in this case and has been a client of Niemann & Heyer ("**Firm**") for years. Parkstone directly paid legal fees to Niemann & Heyer for certain work and separately Parkstone's insurance carrier paid Niemann & Heyer to "defend" the lawsuit. Consequently, two sets of bills have been submitted at various points in time for this lawsuit. One set of bills was sent to the insurance carrier for the "defense" of this matter which included a defense of Plaintiffs' Fair Housing Act ("**FHA**") claims (at first Parkstone covered some of this before the carrier accepted coverage). A second set of bills was

**HANSUM DECLARATION**                                                                 **Page 1 of 6**

sent to Parkstone for direct payment on issues related to the counterclaim or claims for "affirmative relief." The reason for that distinction is because the carrier denied coverage for claims seeking affirmative relief such as the breach of contract claim so the billing had to be separated. The separation is also helpful here for purposes of this fee award.

In preparing this Declaration, I have therefore focused my review of the time sheets directly to Parkstone (since those are where segregated time entries would be for time spent on the breach of contract counterclaim not covered by insurance). I further reviewed the 2015 Hourly Fact Sheet promulgated by the State Bar of Texas, Department of Research & Analysis.

## I.   Determination of lodestar amount.

My calculation of a lodestar amount of attorneys' fees was based on the following legal principles:

> To determine the amount of reasonable attorney's fees, the court calculates the "lodestar" fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly billing rate. . . .The party seeking attorney's fees is required to document the time spent and services performed. . . . The court must review the records and exclude all time that is excessive, duplicative, or inadequately documented. . . . The hours that survive this vetting process are those reasonably expended on the litigation. . . . The court then must determine a reasonable hourly rate.

*Rowten v. Wall St. Brokerage, LLC*, 2015 WL 11120863 (N.D. Tex. Apr. 23, 2015) [internal citations omitted]. Parkstone agreed to pay me a fixed rate of $450 per hour for services rendered on this matter (other people worked on the file too at various times but those fees are not sought herein for simplicity purposes). Considering the State Bar Fact Sheet and passage of time since then with increased hourly rates to account for inflation and other factors, my personal knowledge of hourly rate structures from when I worked at a large Texas based firm, and the prevailing market rates in the community where the services were provided and the practice area in which they were provided, it is my opinion that the attorney hourly rate of $450 per hour rate requested for my

services rendered is reasonable. This rate is comparable to the rates charged by other attorneys in the Austin area who have equivalent experience and practice in these specialized areas of the law. Moreover, federal court experience is also frequently associated with higher billing rates in the local market.

      With respect to the hours worked, some time entries by themselves made it clear that the work was related to the breach of contract counterclaim such as:

| | | |
|---|---|---|
| 11-25-19 | Draft Counterclaims, Joinder Motion, and related order | 1.5 hours |
| 12-24-19 | Revise pleadings and claims to add Ms. Du | 2.1 hours |

And then there were other mixed time entries (time spent for the breach of contract claim was coupled with requests of Harmony Haus to reduce the number of residents to six people):

| | | |
|---|---|---|
| 11-21-19 | Draft motion for preliminary injunctive relief/expedited discovery | 2.4 hours |
| 11-26-19 | Continue drafting injunction brief and research case law for brief | 4 hours |
| 11-27-19 | Revise brief and proposed TRO | 3.7 hours |
| 11-30-19 | Revise brief and proposed TRO | 1.5 hours |
| 1-1-20 | Prepare Brian Pye and prepare for prelim. inj. hearing | 4.8 hours |
| 1-2-20 | Attend preliminary injunction hearing and prepare for same | 4.6 hours |

The carrier did not pay for the above entries (and more time than listed above was spent on such issues but this has been pared-down more to avoid a protracted dispute with the other side). Since the preliminary injunction hearing covered not just the breach of contract claim but also the request to remain at six residents, of the above 21 mixed time entry hours, I estimate about 4 hours were spent toward the breach of contract claim (in addition to the first two entries above).

      For the trial, the carrier had covered most of that time and during the day and a half trial the Court could see that time was also spent on the breach of contract claim (i.e., admitting the

Declaration or contract, establishing the breaches in direct or cross examination, and post-trial briefing on such issues).

Finally, I have spent at least 2 hours preparing this fee application.

The lodestar calculation is 9.6 hours (1.5 + 2.1 + 4 + 2) x $450 = $4,320 with a slight upward adjustment sought here for the results achieved after an appeal (similar to the trial, several hours were spent briefing the breach of contract claim to the Fifth Circuit) for a conservative estimated amount of $6,000 in legal fees.

It is my opinion $6,000 is a reasonable lodestar to use in determining what constitutes a reasonable and necessary fee in this case on the breach of contract claim especially given the time spent at trial and appeal on this issue. My conclusion in this regard is bolstered by my own experiences over the last 20 years with litigation in state and federal courts, having had to testify before on attorneys' fees and segregation issues, and this amount is only a fraction of the entire fees spent on this matter.

Separately, it is my opinion that $8,000.00 would be a reasonable and necessary fee to be awarded to Parkstone if an unsuccessful appeal is made by Plaintiffs to the Fifth Circuit Court of Appeals. And further, that $5,000 would be a reasonable and necessary fee to be awarded to Parkstone if an unsuccessful appeal is made by Plaintiffs to the United States Supreme Court.

## II.   *Johnson* Factors and the *Texas Property Code*.

I have evaluated the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The twelve *Johnson* factors include (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-19.

Of these factors, factors 1 and 8 are taken into account after an appeal to the Fifth Circuit Court of Appeals. Factors 2, 4, 7, 10 or 11 would not require an adjustment of any kind on the time sought here. Moreover, the case was difficult given the number of violations involved by multiple different Harmony Haus residents. On factor 3, a high level of skill was required to, amongst other skills, navigate a preliminary injunction hearing, prepare the case for an accelerated trial with one weekend of preparation, prepare witnesses on short notice, and possess an advanced knowledge of the *Federal Rules of Civil Procedure* and *Federal Rules of Evidence* against two veteran lawyers (Mr. Whitburn also had assistance from a lawyer from Disability Rights Texas).

On factors 5, 6, and 12, this was a unique case in that it is generally cost prohibitive for non-profit organizations to have a full scale trial on the merits in federal court (nor is there usually federal question jurisdiction in most *Texas Property Code* cases). These cases are highly fact specific and should not require any downward adjustment. Moreover, the fixed customary rates charged Parkstone are similar to other fixed rates charged to other property owner association clients for the irm.

Factor 9 is addressed in the attached resume and this Declaration on counsel's background experience.

Finally, with respect to the *Johnson* factors, "[t]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Mauricio v. Phillip Galyen, P.C.*, 174 F. Supp. 3d 944, 951 (N.D. Tex. 2016). Given factor 8 focuses on the results obtained, an upward adjustment is appropriate given the results achieved after a hard fought and complex appeal

including a substantial section of the briefing devoted ot the breach of contract claim as a major appellate point.

Separately, the *Texas Property Code* has four factors it lists to consider on awarding fees, which factors duplicate or are addressed with the above analysis.

**Thus, in my opinion a reasonable and necessary fee for the breach of contract claim taking into account the results obtained and other information reviewed is $6,000.**

I declare under penalty of perjury that the foregoing is true and correct.

Signed on June 23, 2021.

Eric J. Hansum

# Exhibit 1-A

## Eric J. Hansum –

### HONORS AND AWARDS

- AV Preeminent peer review rating from Martindale-Hubbell.
- Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization.

### EDUCATION

The University of Texas School of Law, Austin, Texas
J.D., 2000.
Order of Barristers; *Review of Litigation*, Technical Editor, 1999-2000.

Trinity University, San Antonio, Texas
B.A., 1997, *Cum Laude*.
Phi Beta Kappa.

### LEGAL EXPERIENCE

Last 7+ years    *Niemann & Heyer (Of Counsel).*

2010-Present    *Hansum Law Firm, PLLC (Member).*

2011-2013    *Harden Healthcare, LLC (Assistant General Counsel and Vice President of Litigation (started initially as the Director of Litigation in 2011)).*

2003-2010    *Thompson, Coe, Cousins & Irons, L.L.P., Dallas, Texas and Austin, Texas (Partner 2008-2010).*

2000-2003    *Burford & Ryburn, L.L.P., Dallas, Texas.*

### REPRESENTATIVE EXPERIENCE

- Provide consulting advice to property owners associations.
- Litigate various condominium association, homeowner association, and other property disputes in state and federal courts including issues surrounding breaches of the dedicatory instruments, easements, enforcement actions, covenant litigation, Fair Housing Act matters, and other general disputes involving such associations.
- Help draft and revise dedicatory instruments for property owner associations.
- Attend board meetings for property owner associations.

- Employment consulting on various issues including, without limitation, handbook policies, absence issues, unemployment compensation, workplace violence, employee injuries, and reductions in force both to property owner associations and other industries as well.
- Dealt with lawsuits and matters focusing on tort claims, breach of contract matters, the DTPA, Title VII of the Civil Rights Act, the Texas Labor Code, the Family and Medical Leave Act, ERISA, wrongful terminations, the Americans with Disabilities Act, workplace injuries and related negligence issues, and the Age Discrimination in Employment Act.
- Settled and handled cases in court ordered, EEOC, and TWC mediations.
- Responded to charges of discrimination/drafted position statements in employment and/or Fair Housing matters.
- Numerous trial experiences in state and federal courts and arbitration.

## PUBLICATIONS

- "Litigating Whistleblowing Issues Under Sarbanes-Oxley," *Headnotes*, Dallas Bar Association (April 2004).
- "Where's the Beef?  A Reconciliation of Commercial Speech and Defamation Cases in the Context of Texas' Agricultural Disparagement Law," *19 Rev. Litig. 261* (2000).

## LICENSES, PROFESSIONAL ASSOCIATIONS, AND INTERESTS

- Robert W. Calvert Inn of Court, former member.
- Austin Bar Association Labor and Employment Section, Treasurer
- Admitted to practice in all Texas state courts, the U.S. District Courts for Texas, the U.S. Court of Appeals for the Fifth Circuit, and the United States Supreme Court.
- State Bar of Texas and Austin Bar Association, member.
- Trinity University Alumni Association, Austin Chapter President from 2006-2008, and officer from 2008-2009.
- AAA, Employment Panel Member (Employment)